Order Filed on
**10/26/2005**
by Clerk U.S. Bankruptcy
Court District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In Re: | Case No.: |
|---|---|
| | Adv. No. |
| | Hearing Date: |
| | Judge: |

# OPINION

The relief set forth on the following pages, numbered one (1) through _____ is hereby **ORDERED**.

**DATED: 10/26/2005**

Honorable Novalyn L. Winfield
United States Bankruptcy Judge

*UNITED STATES BANKRUPTCY COURT*
*Martin Luther King Federal Building*
*50 Walnut Street*
*Newark, New Jersey 07102*
*973-645-4704*

*Novalyn L. Winfield*
*Bankruptcy Judge*

October 25, 2005

Robert Rich, Esq.
25 Pompton Avenue
Verona, New Jersey 07044

Mark Mulick, Esq.
50 Church Street
Montclair, New Jersey 07042

        RE: Estate of Blanca Llanes
           Case No.: 04-29886
           **LETTER OPINION**

Dear Counsel:

  This matter is before this Court on a motion by Blanca Llanes ("Debtor") seeking to expunge the amended proof of claim filed by Mark Mulick, Esq. ("Mulick"). For the reasons set forth below, this Court finds that Mulick's proof of claim shall not be expunged. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (B). The following constitutes this Court's findings of fact and conclusions of law made

in accordance with Bankruptcy Rule 7052.

## BACKGROUND

Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on June 11, 2004. Prior to the filing of her petition for bankruptcy, Debtor retained Mulick to prosecute a sexual harassment case filed against Nordstroms Department Store ("Nordstorms") and her supervisor Joseph Pariso ("Pariso"). The underlying claims were brought under the New Jersey Law Against Discrimination NJSA 10:5-1. Mulick filed suit on February 6, 2004 in the Superior Court of New Jersey, Law Division ("State Court"). Mulick and the Debtor executed a retainer agreement which provided, inter alia, that Mulick would be compensated on a contingency fee basis and that the Debtor would reimburse him for all expenses paid by him in connection with the lawsuit[1].

Mulick continued to represent Debtor until August 27, 2004, at which point, he sought and received an order from the State Court relieving him as counsel to Debtor. In his motion seeking to be relieved as counsel to Debtor, Mulick asserted that the Debtor effectively had discharged him by her refusal to communicate with him. His motion detailed the history of his representation of the Debtor. The Debtor did not file any certification or affidavit with the State Court which challenged Mulick's representations. For that matter, the Debtor has not filed any certification or affidavit with this Court which contradicts any of the facts as set forth by Mulick. Accordingly, the following facts are drawn from documents submitted by Mulick in response to Debtor's motion to expunge his claim.

---

[1] The agreement provided that Mulick's fee would be based upon the gross amount recovered as follows: 33 a percent for the first $300,000.00; 25 percent of the next $300,000.00; 20 percent of the next $300,000.00; 15 percent of the next $300,000.00; and 10 percent of any amount exceeding $1,200,000.00.

2

Mulick's specifies that he did not voluntarily withdraw. Rather, Mulick claims that due to Debtor's unreasonable actions during the settlement negotiations and thereafter, he could no longer effectively represent her and that the attorney/client relationship was materially affected. He states that he was able to secure a settlement with Nordstorms initially for $38,000. Debtor had accepted the offer but several days later changed her mind and refused to settle. Thereafter, Mulick engaged in discovery and subsequently Mulick participated in a State Court mediation. As a result of the mediation, Nordstroms offered $55,000.00 to settle the lawsuit. Debtor accepted and signed the subsequent settlement agreement in June, 2004. Once again, after several days the Debtor instructed Mulick to rescind the settlement despite Mulick's advice that she should accept the settlement. The Debtor did not complain that she was unsatisfied with the monetary provisions of the second settlement agreement. Rather, the Debtor instructed Mulick to additionally request from Nordstroms that her supervisor, Joseph Pariso, be fired as a condition to settlement. Nordstroms refused this additional condition, although it did not rescind the monetary offer. After Mulick informed the Debtor that Nordstroms refused her condition, she required him to withdraw from the settlement.

Several days later Mulick and the Debtor engaged in another conversation in which he again urged her to accept the settlement. Mulick states that he told her that the $55,000.00 settlement offer was reasonable in that she did not lose any wages and her medical treatment for emotional distress was limited to a single emergency room visit. He further advised her that it was unreasonable to expect Nordstroms to fire Pariso. Mulick states that the Debtor became irate at this statement and the conversation ended. Also on that same day, Debtor's daughter called Mulick's secretary and informed him that if he attempted to contact Debtor she would file charges with the police. These conversations were the impetus for

3

Mulick's request to be relieved as counsel.

After he was relieved as Debtor's counsel, Mulick moved to perfect an attorney's lien on the settlement amount. It was at this point that he learned that a bankruptcy petition had been filed in June, 2004. During all of the second settlement discussions in June, 2004, the Debtor had not informed Mulick of her bankruptcy filing. Because of the pending bankruptcy, the State Court denied his motion and directed Mulick to perfect his lien through the bankruptcy proceeding.

Thereafter, on October 28, 2004, Mulick sought an order from this Court for relief from the automatic stay in order to proceed in state court for an attorney's lien. The Court denied Mulick's motion, but permitted him to file a claim based on quantum meruit. On November 10, 2004, Mulick filed a proof of claim.

Thereafter, on June 7, 2005, Mulick filed a certification which amended his proof of claim based upon a theory of quantum meruit. The certification set forth a claim for $26,250.00 for fees and $630.00 for expenses. On June 17, 2005 Debtor filed an objection to Mulick's claim for quantum meruit. Debtor bases her motion to expunge Mulick's amended proof of claim on the following theories: (1) An attorney who voluntarily withdraws from representing a client under a contingent fee arrangement is subsequently prevented from receiving any fees for his services under quantum meruit; (2) allowance of a quantum meruit claim, should be made only if there is an ultimate recovery in the underlying harassment suit, and limited to disbursements and one third of the superceding attorney's fee; (3) as a contingent claim the claim for attorneys fees should be disallowed under Code § 502(b); and (4) the contingent fee agreement is an executory contract which can be avoided under Section 365 of the Bankruptcy Code.

4

## **DISCUSSION**

As a general rule, a client can dismiss her attorney with or without cause. Cohen v. Radio-Electronics Officers, 146 N.J. 140, 157 (1996). This approach recognizes the client's "unqualified right to terminate the attorney-client relationship at any time." Id. at 159. See also Glick v. Barclays De Zote Wedd., 300 N.J. Super. 299 (App.Div.1997). However, "[a]n attorney who is hired on a contingency fee basis and is latter discharged before completion of the services is not entitled to recover fees on the basis of such contingent agreement; instead, he or she may be entitled to recover on a quantum meruit basis for the reasonable value of the services rendered." Id. at 300 (citing to Cohen v. Radio-Electronics Officers, 146 N.J. 140 (1996); and In re Estate of Poli, 134 N.J. Super. 222, 227 (Ch.Div.1975)).

The rule allowing an attorney to recover his fee in quantum meruit has been found to balance the "important interests of (1) protecting the special fiduciary nature of the attorney-client relationship and the client's inherent right to discharge and (2) assuring fair and adequate compensation to an attorney." Cohen v. Radio-Electronics Officers, 146 N.J. 140, 164 (1996). Quantum meruit is a quasi-contractual obligation which the law imposes in order to bring about justice. Glick v. Barclays De Zoete Wedd., 300 N.J. Super. 299, 310 (App.Div.1997). "Quantum meruit means as much as deserved and is an action imposed for reasons of justice and the avoidance of inequity." In re Nelson, 206 B.R. 869, 881 (Bankr. OH.1997) In order to prevail under a theory of quantum meruit, an attorney must show that he was discharged without good cause or that his withdrawal from representation was required. Dinter v. Sears, Roebuck & Co., 278 N.J. Super. 521, 531-32 (App.Div.1995).

*Approved by Judge Novalyn L. Winfield October 26, 2005*

**I.    Quantum Meruit**

Debtor's Counsel argues that Mulick withdrew from representing Debtor voluntarily and that because of his voluntary withdrawal, is not entitled to any quantum meruit claim. This Court rejects Debtor's assertion that Mulick voluntarily withdrew as Debtor's counsel. The evidence before this Court shows that Mulick diligently represented the Debtor. His time records indicate that he engaged in negotiations with Nordstroms and produced two different settlements. The first settlement was obtained before any significant discovery was under taken. When Debtor rejected that offer, Mulick then undertook discovery, engaged in mediation, and obtained an improved settlement offer. Only after the Debtor rejected the second offer and informed him that she would not be accepting his advice any longer did Mulick seek to be relieved. Clearly, the Debtor, not Mulick, terminated the lawyer-client relationship.

When Debtor refused to communicate with Mulick and also threatened to refer him to the police if he did contact her, she left Mulick with no other choice but to withdraw as her attorney. When there has been a total breakdown in communications between the attorney and client, courts have found that an attorney has just cause to withdraw. International Materials Corp. v. Sun Corp., Inc., 824 S.W.2d 890, 894 (Mo.1992); See also Novinger v. E.I. DuPont De Nemours & Co., 809 F.2d 212, 218 (3rd Cir. 1987).

Moreover, Mulick's claim quantum meruit is not based upon the fee agreement itself but, rather, on an implied contract that is imposed by equity to prevent any unjust enrichment the person raising the claim may have suffered. In fact, the Supreme Court of New Jersey has held in Cohen that "[u]nder the modern rule, when a client discharges an attorney, the attorney may recover the fair value of his or her services ..." 146 N.J. at 162. The New Jersey Supreme Court specifically stated that this rule applies even

*Approved by Judge Novalyn L. Winfield October 26, 2005*

when contingent fee agreements are concerned. Id. at 163. ("The rule continues to apply extensively to contingent fee agreements.") (See, e.g., Gaines, Gaines, & Gaines, P.C. v. Hare, Wynn, Newell & Newton, 554 So.2d 445 (Ala.Civ.App. 1989); Fracasse v. Brent, 6 Cal.3d. 784 (1972) (en banc); Rosenberg v. Levin, 409 So.2d 1016 (Fla.1982); Plaza Shoe Store, Inc. v. Hermel, Inc., 636 S.W.2d 53 (Mo.1982); Martin v. Camp, 219 N.Y. 170, (1916)).

## II.   Disallowance of an Unmatured or Contingent Claim Under § 502(b) of the Bankruptcy Code

Debtor also argues that this Court should disallow Mulick's claim because there has been no recovery upon the underlying litigation. In other words, Debtor argues that the claim is unmutured and that it should be disallowed under Bankruptcy Code § 502(b). Debtor's argument is not persuasive. Section 502(b) does not require disallowance of an unmatured claim. Rather, claims that are contingent or unmatured can be estimated under Section 502(c). 4 Collier on Bankruptcy ¶ 502.03, p. 502-25 (15th ed. 2001). However, the Court need not even estimate the claim since a quantum meruit award is readily ascertainable by an examination of the services actually rendered in relationship to a reasonable hourly rate.

Nor is the Court persuaded that Mulick's claim is contingent. Debtor relies upon language contained in Dinter v. Sears, Roebuck & Co. in which the Court held that "[w]here an attorney is discharged by the client without good cause there *may* be an entitlement to *a portion* of an ultimate recovery based upon quantum meruit, or perhaps other grounds." 278 N.J. Super. 521, 531 (App.Div.1995). Debtor argues that the language contained in Dinter is proof that the New Jersey Courts would never allow a recovery on a quantum meruit cause of action when the attorney is retained under a

7

*Approved by Judge Novalyn L. Winfield October 26, 2005*

continency fee agreement and where recovery has yet to occur. Debtor's argument is misplaced, in that the Dinter sets forth a much narrower ruling.

In Dinter, an attorney was retained under a contingency fee agreement to pursue a negligence case on behalf of his client. Id. at 525. The attorney obtained a settlement agreement which the Dinters ultimately refused. Id. at 535. The matter subsequently went to trial and a verdict was returned against the Dinters. The Dinters then asked the attorney to represent them in an appeal, but the attorney refused, unless the Dinters advanced the costs of the trial transcripts for the appeal. Id. at 526. The Dinters subsequently retained a different law firm which successfully prosecuted the appeal and which resulted in a reversal and remand to trial court. Id. at 526. The Dinters then retained new trial counsel who eventually settled the matter. Id. at 528. The first attorney sought and received an award of fees and expenses from the trial court. The Dinters appealed this award.

The Appellate Division found that the retainer agreement with the first attorney ended when he did not proceed with an appeal after the adverse verdict was returned. Id. at 532-33. The Appellate Division stated:

> "Because there was no agreement which required Siegel to represent the Dinters on appeal, the attorney/client relationship terminated not only upon entry of the adverse judgment, but upon Siegel's express refusal to take an appeal, and even beyond this, the express confirmation by the Dinters of the fact that Siegel was no longer to represent then in any fashion in the matter."

Id. at 553.

The Appellate Division also distinguished the case relied upon by the trial judge when he made the quantum meruit award. The Appellate Division noted that in International Materials v. Sun Corp., 824 S.W.2d 890

8

*Approved by Judge Novalyn L. Winfield October 26, 2005*

(Mo.1992) the attorney had withdrawn from representation for "just cause." Id.

Unlike the facts in Dinter, Mulick did not refuse to represent the Debtor. Rather, Mulick was willing to represent Debtor, but it was the *Debtor's actions* which made it impossible for Mulick to continue to do so. The Dinter decision stands for the proposition that an attorney is not entitled to any quantum meruit claim if his actions have terminated a contingent fee agreement.

### III.    Rejection of Executory Contract Under Section 365 of the Bankruptcy Code

Debtor also argues that the contract between Debtor and Mulick is an executory contract and that Debtor may reject such a contract. In order to fall within the ambit of Section 365, the disputed contract must have been executory at the time of the filing. The record reveals that at the time the case was filed, Mulick had not obtained an order from the State Court relieving him as counsel to the Debtor. As such, the contract was arguably executory on the petition date because to the extent that the relationship had not yet officially terminated, performance remained due by both parties. However, the Debtor has not moved to reject the agreement. Further, even if Debtor obtained an order rejecting her agreement with Mulick, he would still have a prepetition claim. Section 502(g) provides that:

> "A claim arising from the rejection, under section 365 of this title ..., of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition "

11 U.S.C.A 502(g).

Calculations of Mulick's rejection damages can most easily be made by resort to quantum meruit. Consequently, the Debtor's effort to negate Mulick's claim by this argument is unavailing.

9

### IV. The Allowed Claim Amount

As identified *supra*, quantum meruit is a form of relief that has its basis in principles of equity. As such, the proper measure of Mulick's claim under a theory of quantum merit is "as much as is deserved." Bruno v. Gale, Wentworth & Dillon Realty, 371 N.J. Super. 69, 74 (2004). A review of Mulick's certification of services demonstrates that he properly and adequately rendered services on the Debtor's behalf.

However, an award grounded on the reasonable value of services rendered should include only those services directly related to services for the client. Therefore, this Court will not compensate Mulick for the time spent to withdraw as counsel, or to establish his claim against the Debtor. This results in disallowance of the sum of $8,470.00, representing services rendered from July 27, 2004 through June 1, 2005. Accordingly, compensation shall be reduced to fees of $17,180.00 and expenses of $630.00, and shall constitute Mulick's allowed prepetition claim.

*Approved by Judge Novalyn L. Winfield October 26, 2005*